UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LAKEISHA THOMPSON,<br><br>Plaintiff,<br><br>vs.<br><br>EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, MICHIGAN FIRST CREDIT UNION,<br><br>Defendants. | 2:18-CV-12495-TGB<br><br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL DISCOVERY RESPONSES |

## I. Introduction

The Court held a hearing on April 16, 2019, at which counsel for both parties appeared. At the hearing, the Court considered two outstanding motions from Defendant, including the Motion to Compel Discovery Responses from Plaintiff and to Extend Dates (ECF No. 33).

As stated on the record, the Court took Defendant's Motion to Compel (ECF No. 33) under advisement and now issues this written order resolving the motion.

## II. Background

The Court has held several telephonic hearings with Plaintiff and Defendant Michigan First Credit Union ("MFCU") discussing discovery

problems. *See* ECF Nos. 31, 32. On the January 18, 2019 call, MFCU complained that Plaintiff failed to respond to basic discovery and had not provided responses to interrogatories. Plaintiff's counsel informed the Court that they had communication problems with Plaintiff and were attempting to secure her signature on the response to interrogatories. The second call was on the February 20, 2019. In that conference, MFCU informed the Court that they had received answers, but that the answers were "woefully incomplete" and included inappropriate objections. The Court granted MFCU leave to file a motion to compel if that was necessary to resolve the disagreement. On March 8, 2019, MFCU filed the instant Motion to Compel, to which Plaintiff responded in opposition. ECF Nos. 33, 34, 35. On April 1, 2019, the Court conducted another telephonic hearing with all parties. On that call, parties informed the Court that discovery was complete except those issues relating to the pending motion, and that Plaintiff still intended to depose an MFCU executive.

MFCU moves the Court to compel discovery responses from Plaintiff in two areas: (1) answers to interrogatories, and (2) production of requested documents. MFCU seeks details of the settlements with other defendants, attorney fee arrangements, and Plaintiff's credit report history, saying this information is relevant and not protected by privilege. ECF No. 33, PageID.199. MFCU claims that "the settlement agreements could bear on the credibility of witnesses (e.g. witnesses may

be biased as a result of the settlement)[.]" ECF No. 33, PageID.211. MFCU says that they need this information before they can complete deposition of Plaintiff "and potentially other witnesses." ECF No. 33, PageID.200. MFCU also claims that any objections lodged by Plaintiff are waived since they were untimely. ECF No. 33, PageID.212.

Plaintiff responds that that the settlements with the other defendants, Equifax and Transunion, are not relevant to her claims against MFCU, and that the settlement agreements have no bearing on witness credibility. ECF No. 34, PageID.297–98. Plaintiff says that there is no right to contribution under the FCRA, so there is no danger of "double recovery" here, making the settlement agreements with the other defendants irrelevant to MFCU. ECF No. 34, PageID.298–299. Plaintiff also says that attorney fees—if awarded—will be approved by the Court using the lodestar method, so the client agreement is also irrelevant. ECF No. 34, PageID.301. Plaintiff claims that redactions to her credit report history were to protect sensitive or irrelevant information. ECF No. 34, PageID.302. Plaintiff further says that Federal Rule of Civil Procedure 33 (Interrogatories) contains a waiver for untimeliness, but Rule 34 (Document Production) does not. ECF No. 34, PageID.302–303. "Therefore, Plaintiff has not waived her objections to MFCU's requests for production of documents." ECF No. 34, PageID.303.

## III. Analysis

MFCU challenges Plaintiff's response to two interrogatories, and four requests to produce documents. The Court will examine each interrogatory in turn.

> INTERROGATORY NO. 7
> State the amount of consideration you received from each other defendant in this action in consideration for the settlement, release, or compromise of your claims against that defendant.
> RESPONSE
> Plaintiff objects to the request as calling for information protected by Attorney-Client Privilege or the Work Product Doctrine. Furthermore, the settlement [with] each co-defendant precludes disclosure of this information as it includes a confidentiality clause.

In her complaint, Plaintiff alleges both negligent and willful noncompliance with the FCRA by MFCU. ECF No. 1, PageID.4–7. In the case of negligent noncompliance, the FCRA allows recovery of actual damages plus costs and fees. 15 U.S.C. § 1671o(a)(1); *see also Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012). But where the noncompliance is willful, the FCRA allows either actual damages, or statutory damages in an amount more than $100 and less than $1,000, plus costs and fees. 15 U.S.C. § 1681n (a)(1)(A); *see also Boggio*, 696 F.3d at *id*.

Even if a jury only finds negligent noncompliance by MFCU—thereby limiting Plaintiff to recovery of actual damages only—there is no

right to contribution or indemnification under the FCRA. *Boatner v. Choicepoint Workplace Sols., Inc.*, No. CV 09-1502-MO, 2010 WL 1838727, at *2 (D. Or. May 6, 2010) (citing *McSherry v. Capital One FSB*, 236 F.R.D. 516, 520–21 (W.D. Wash. 2006); *Kay v. First Cont'l Trading, Inc.*, 966 F. Supp. 753, 754–56 (N.D. Ill. 1997); *Cintron v. Savit Enters.*, No. 07–cv–04389 (FLW), 2009 WL 971406, at *2–4 (D.N.J. Apr. 9, 2009)); *see also Jansen v. Equifax Info. Servs., LLC*, No. 05-CV-385-BR, 2010 WL 3075324, at *2 (D. Or. Aug. 6, 2010).

Accordingly, there is no danger of double recovery by Plaintiff. For that reason, the details of Plaintiff's settlement agreements with other defendants are irrelevant. MFCU is entitled only to discover "any nonprivileged matter that is relevant to [their] claim or defenses and proportional to the needs of the case…" FED. R. CIV. P. 26(b)(1). Because this material is not relevant to MFCU's claims or defenses, it is not discoverable.

MFCU also advanced alternative arguments in support of its request for this information. Counsel for MFCU argued at the hearing that it is possible that the settlement agreements with other defendant may have somehow inadvertently dismissed MFCU, in which case MFCU should be entitled to know that Plaintiff dismissed it from the case. Counsel argued that there is no way to know whether MFCU was mistakenly (but somehow validly) also dismissed from this action without

seeing the settlement agreements. This argument finds no firm footing in any law of which the Court is aware.

MFCU further argued that the settlement agreements should be discoverable for the purpose of identifying witness bias. The argument here is that provisions in the agreements may bias the testimony of key witnesses from the now-dismissed defendants. Although it does not explicitly say so, MFCU's argument may be suggesting the possibility that the settlement agreements contain a so-called "Mary Carter" provision.[1] A "Mary Carter" agreement is "an agreement limiting the liability of those [settling] defendants to a sum certain, [and to] continue to litigate the matter in order to thrust the lion's share of liability on the non-agreeing defendants." *Leon v. J & M Peppe Realty Corp.*, 190 A.D.2d 400, 414 (N.Y. App. Div. 1st Dep't 1993). There is some precedent for disclosure of these types of agreements that create a clear bias between defendants against one another. *See State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, 325 F.R.D. 602, 607 (E.D. Mich. 2016), adopted, No. 14-CV-10266, 2016 WL 6822014 (E.D. Mich. Nov. 18, 2016) (citing *Thomas & Marker Const. Co. v. Wal–Mart Stores, Inc.*, No. 06–406, 2008 WL 3200642, at *3 (S.D. Ohio Aug. 6, 2008) (allowing disclosure of settlement agreement because of possibility of witness bias); and

---

[1] See, generally, Dave Yoh & William Lesser, *What Is a "Mary Carter" Agreement?*, AM. BAR ASS'N., https://www.americanbar.org/groups/litigation/committees/admiralty/practice/2018/what-is-a-mary-carter-agreement/ (last visited Apr. 23, 2019).

*Gardiner v. Kelowna Flightcraft, Ltd.*, 10–947, 2011 WL 1990564, at *2 (S.D. Ohio May 23, 2011) (party requesting disclosure of agreement that might contain a Mary Carter provision had the right to determine "the practical and legal effect of the agreement," which could then be argued to the court for a final determination)). But when a Mary Carter agreement exists, the settling defendants remain in the litigation. Indeed, the point of the agreement is that one defendant settles for a certain capped amount of damages in exchange for assisting plaintiff in their case against non-settling defendants. For the scheme to prevail, defendants must remain in the litigation. In the instant case, both settling defendants, Equifax Information Services, LLC, and Trans Union, LLC, have been dismissed pursuant to their settlements with Plaintiff. ECF Nos. 26, 27.

MFCU has not presented any reason to believe that the settlement agreements here contain any such terms, but rather argues that inclusion of such a provision is within the general realm of conceivability. While it is always the case that anything is possible, that maxim is not a justification for requiring the disclosure of settlement agreements that are otherwise confidential. Witness bias may be explored through diligent cross-examination. If a witness called from one of the settling defendants demonstrates bias related to their settlement agreement, MFCU may raise the question of whether it should be disclosed at that time.

MFCU's motion to compel a response to Interrogatory No. 7 is **DENIED**.

Defendant also seeks to compel an answer to the following interrogatory:

> INTERROGATORY NO. 12
> Please provide your credit score for each month during the last 3 years.
> RESPONSE
> Plaintiff objects to the requests as calling for information that is irrelevant and disproportionate to the needs of this case.

Plaintiff's claim is tied to MFCU's allegedly negligent and errant reporting on her credit report. Plaintiff's counsel attempted at the hearing to argue that Plaintiff's emotional injury comes not from the effect of the errant reporting on her credit score, but by the mere existence of an errant reporting. However, if the errant reporting had no material impact on her credit score or her ability to obtain credit, loans, or other financial instruments, the allegedly errant reporting by MFCU would amount to little more than a harmless clerical error. To the extent that Plaintiff's injury must be logically and inextricably tied to the effect that the errant reporting had on her credit report, her credit report history is relevant and discoverable material.

Plaintiff informed however that the specific request of three years' worth of reports, broken down by month may be impossible to obtain. According to Plaintiff, the credit reporting agencies only create a report

upon request and cannot now go back to a point in time to produce the report that would have existed at that moment. But this does not explain why Plaintiff redacted her current existing report. Because information about her credit report and score is relevant, Plaintiff is ordered to to provide as many of her credit reports from the past three years as she is able to obtain, and limit redactions only to personal identity information of the kind that is normally redacted from court filings.

MFCU's motion to compel a response to Interrogatory No. 12 is **GRANTED in PART**.

Defendant also seeks to compel responses to the following requests for production of documents:

> REQUEST TO PRODUCE NO. 1
> Produce all documents you may rely on at trial in this matter.
> RESPONSE
> Plaintiff has not yet determined all documents she will introduce, however, see attached.

MFCU's motion to compel all the documents Plaintiff intends to rely on at trial is **GRANTED**. Discovery is closed for Plaintiff's claims, and trial is imminent. Plaintiff is ordered to produce all documents it intends to rely on at trial within 14 days of this order.

> REQUEST TO PRODUCE NO. 5
> Produce copies of the credit report(s) on which you rely in this action.
> RESPONSE
> See attached. [incomplete reports attached]

9

For the same reasoning as applied to Interrogatory No. 12, this request to produce is **GRANTED**. Plaintiff must provide the credit reports on which she relies in this action redacted only for personal identity or sensitive information.

> REQUEST TO PRODUCE NO. 6
> Produce a copy of your fee agreement with your attorney.
> RESPONSE
> Plaintiff objects to the request as calling for information protected by Attorney-Client Privilege.

Plaintiff's fee agreement with her attorney is irrelevant to MFCU's defense or settlement position. MFCU's motion is **DENIED** as it pertains to Request to Produce No. 6.

> REQUEST TO PRODUCE NO. 7
> Produce a copy of any and all settlement agreements, releases, or any other documents executed in resolution of the claims you asserted in this action against any and all other defendants.
> RESPONSE
> Plaintiff objects to the request as calling for information protected by Attorney-Client Privilege. Moreover, Plaintiff is precluded from disclosure pursuant to confidentiality clauses contained in each.

For the reasons explained under Interrogatory No. 7, MFCU's motion as it pertains to Request to Produce No. 7 is **DENIED**.

## IV. Conclusion

MFCU's motion to compel:

    Interrogatory Number 7 is DENIED;

    Interrogatory Number 12 is GRANTED in PART;

    Request to Produce Number 1 is GRANTED;

    Request to Produce Number 5 is GRANTED;

    Request to Produce Number 6 is DENIED;

    Request to Produce Number 7 is DENIED.

MFCU's request for Plaintiff to pay MFCU's attorneys' fees related to this motion is DENIED.

The items ordered produced herein shall be provided within 14 days of the date of this Order. All other discovery is closed except for as specified in this Court's April 19, 2019 Order (ECF No. 38).

    **IT IS SO ORDERED**.

Dated: May 9, 2019        <u>s/Terrence G. Berg</u>
                                    TERRENCE G. BERG
                                    UNITED STATES DISTRICT JUDGE